UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAURA KAUFMAN,

   *Plaintiff*,

      v.

MELISSA GLIATTA
THOR EQUITIES LLC, and
JOSEPH J. SITT

   *Defendants*.

Civil Action No.:
1:25-cv-02001-ALC

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

  Plaintiff Laura Kaufman was an at-will employee of Thor Equities LLC (a real estate developer) under a written employment agreement. In June 2022, when Thor expressed an intention to let plaintiff go for poor performance, plaintiff claimed that a $400,000 bonus had vested because she was entitled to 30 days' notice of termination, and the bonus would have become payable within 30 days. Thor disputed that interpretation of the contract. The parties then entered into two standstill agreements, and her employment continued, while they discussed a resolution.

  On December 5, 2022, a compromise was reached, and by written Separation Agreement & Release, plaintiff voluntarily terminated her employment immediately and received more than $138,000 in additional compensation in exchange for broad, general releases of Thor and its agents, as well as specific representations that Thor owed plaintiff no other money. After collecting the settlement consideration, and without further discussion or demands, plaintiff (represented by her husband) brought this action to recover the released $400,000 bonus, and damages stemming from having allegedly been fraudulently induced to enter into the Employment Agreement in the first place.

For the reasons below, the Complaint should be dismissed with prejudice. As demonstrated in Point I, each of the four counts is defeated by the releases and acknowledgments contained in the Separation Agreement & Release.

Separately, even if the releases did not doom the Complaint, the four causes of action do not state claims for relief. Plaintiff alleges that she was fraudulently induced to enter into an employment agreement by misrepresentations regarding Thor's access to capital (Count I). But the employment agreement itself expressly disclaims the existence of any representations outside of the contract itself. In addition, the alleged "representations" are not actionable. Moreover, plaintiff elected to ratify the employment agreement upon discovery of the "fraud," thereby waiving a fraudulent inducement claim.

The bonus claim (Count II) fails because plaintiff was required to be employed on December 31, 2022 to get the bonus, but she voluntarily separated from employment – and was not "Actively Employed" – on the payment date, thereby disqualifying her from the bonus. In addition, to manufacture a bonus claim, plaintiff wholly misconstrues a notice provision in the Employment Agreement, which has no effect when the employer wishes to terminate employment immediately.

The good faith and fair dealing claim (Count III) fails because it merely duplicates the nonactionable breach of contract claim. And finally, plaintiff's attempt to have the Separation Agreement declared null and void on grounds of fraudulent inducement (Count IV) fails because it merely alleges that defendants did not intend to pay a bonus when one was required to be paid. But that is merely a contract claim dressed up as fraud. And the allegation that defendants misrepresented that plaintiff's rights under the Employment Agreement would not be affected by the Separation Agreement is not only ludicrous, but contradicts express language in the accompanying cover letter and the agreement itself.

All else aside, if the contract claim or any analogue survives, the claims as against the

individual defendants should still be dismissed because they are not parties to either contract.

## FACTS[1]

### The Employment Agreement

On June 11, 2021, Plaintiff signed an Employment Agreement and became an "employee at will" of Thor Equities, LLC, a real estate business, serving as Executive Vice President-Life Sciences (Employment Agreement ["EA"], attached to the Complaint as Exhibit A thereto, at §§ 1, 2). Plaintiff's base annual salary was $400,000 (EA at § 4(a)), and she was eligible for a "Discretionary Performance Bonus" of $400,000, conditioned on her being "'Actively Employed' by the Company on such payment date" of June 29, 2022 (that is, 15 days after the 12-month anniversary of her June 14, 2021 "Start Date" set forth in Section 1) (EA at § 4(b)). "Actively Employed" required, among other things, that plaintiff be "employed by the Company and in good standing with the Company" (id.).

The Employment Agreement provided that either party could terminate the agreement on 30 days' notice (EA § 6(a)), whereupon, "at the sole discretion of the Company," plaintiff would either continue to provide services, and be compensated, up to the effective date of the termination "or such earlier date set by the Company" (EA § 6(a)(a)), or "immediately cease her employment with the Company, and receive no compensation from the Company thereafter, except as expressly provided for below." (EA § 6(a)(b).) Thus, upon a termination notice by either party, plaintiff's employment could last anywhere between zero and thirty days, *at the Company's discretion*. The required payments "below" included payment of any bonus if it was then "due under Section 4(b)."

---

[1] The facts are drawn from the Complaint (Dkt. 7) and the documents attached or referred to in the Complaint. On a Rule 12(b)(6) motion, the court may consider the facts alleged in the complaint; documents attached to it or incorporated in it by reference; documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference; and documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint. Revitalizing Auto Cmtys. Envtl. Response Tr. v. Nat'l Grid USA, 92 F.4th 415, 436 (2d Cir. 2024); In re Merrill Lynch & Co., Inc., 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003) aff'd sub nom. Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2d Cir. 2005). Documents control over conflicting allegations of the complaint. See Bermudez v. Colgate-Palmolive Co., 667 F. Supp. 3d 24, 32 (S.D.N.Y. 2023).

(EA § 6(b).)

**The Bonus Dispute**

Plaintiff alleges that Thor threatened to terminate her on June 10, 2022, in violation of "the 30 days' notice requirement in ¶6(a)." (Compl. ¶ 48.) Plaintiff does not explain how that alleged threatened "violation" squares with the Company's right to immediately cease her at-will employment, and cut off compensation, as expressly set forth in Section 6(a)(b). Plaintiff identifies the dispute over the 30-day notice provision as "the failing that led to this case." (Compl. ¶ 48.)

Plaintiff acknowledges that there were amendments to the Employment Agreement in June and August 2022 (Compl. ¶ 49). In the June amendment, reflected in a June 28 email exchange, the parties agreed that plaintiff would remain an employee at will; that the bonus "payment date" in the Employment Agreement would be extended to August 29, 2022; and that if Plaintiff was still employed on that date, she "would be paid the bonus." Declaration of Melissa Gliatta ("Gliatta Decl." ¶ 3 and Exh. B thereto). The emails set forth Thor's position that no bonus was then due because plaintiff was required to be employed on the payment date, and it was prepared to terminate her that day (id.).

Plaintiff continued her at-will employment. On August 29, 2022, the parties postponed to December 31, 2022 the bonus payment date, while keeping all other terms the same (id.; Compl. ¶ 51).

**The Separation Agreement & Release**

On December 5, 2022—more than three weeks before the revised bonus "payment date" of December 31—the parties entered into a Separation Agreement & Release (Compl. ¶ 50; Compl. Exh. B ["SA"]).[2] Plaintiff acknowledges that her last date of employment was December 5, 2022

---

[2] Plaintiff acknowledges signing the Separation Agreement & Release, but attached an unsigned copy to her pleading. For the sake of an accurate record, on this motion defendants have submitted the fully-signed version (Gliatta Decl. Exh. A).

(Compl. ¶ 50). The Company agreed to pay her $138,461.54, representing 90 work-days of salary, less lawful deductions, "in accordance with Thor Management Company LLC's regular payroll procedures and dates." (SA ¶ 4(a).) Plaintiff specifically and expressly acknowledged that "no other sums are due and payable or otherwise owing to Employee as a result of this Agreement or *any other employment or other agreement* between Employee and Thor Equities, LLC or any affiliate thereof." (SA ¶ 3, emphasis added.)

The Separation Agreement & Release also contains a broad "<u>General Release of All Claims,</u>" which states:

> 4. **<u>General Release of All Claims.</u>** Employee knowingly and voluntarily releases and forever discharges Thor Management Company, LLC, its parent corporation, Thor Equities LLC and all affiliates, subsidiaries, divisions, predecessors, insurers, co-employers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and the trustees, administrators, fiduciaries and insurers of such plans and programs (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Separation Agreement & Release, including, but not limited to, any alleged violation of:
> …
> • any public policy, contract, tort or common law."

(SA ¶ 4.)

Similarly, in bold, capitalized letters, "**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS SEPARATION AGREEMENT & RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**" (SA ¶ 11.)

In Section 5, which sets forth "Acknowledgments and Affirmations" of the Employee, plaintiff affirmed "that Employee has been paid and/or received all compensation, wages, bonuses,

commissions, and/or vested benefits that were due Employee as of" the date of signing (*i.e.,* December 5, 2022). (SA ¶ 5.) Further, she acknowledged that any payments "due at a later date shall be provided in accordance with Employer's standard procedures and applicable benefit plan documents." Section 2 set forth the only payments that were "due at a later date" (that is, the $138,461.54).

The Separation Agreement & Release also states in Section 11 that it "sets forth the entire agreement between the parties hereto, and fully supersedes any prior agreements for understandings between the parties, which is incorporated herein by reference."[3]

**The Complaint**

Following payment of all sums due her, plaintiff filed a complaint, and later an amended complaint in the U.S. District Court for the District of Connecticut. Kaufman v. Gliatta, No. 3:24-cv-01026-SFR (D. Conn.). Defendants moved to dismiss for failure to state a claim and because the forum selection clause in the EA required litigation in New York County. Id. (Dkt. 41) (Defendants' Motion to Dismiss). Instead of opposing, plaintiff voluntarily dismissed the action and filed a complaint in this court, with modifications.

The present complaint purports to plead four causes of action. The first is for fraudulent inducement of the Employment Agreement. Plaintiff alleges that she was fraudulently induced to accept employment based on COO Melissa Gliatta's misrepresentation that a Danish pension fund "had agreed to provide a programmatic commitment for life science real estate investment in the amount of $500,000,000" (Compl. ¶ 59) and Ms. Gliatta's misrepresentation that "Thor had

---

[3] Section 11 of the Separation Agreement and Release further provides that "those covenants which survive termination under employee's Employment Agreement with Thor Equities LLC dated June 11, 2021, shall continue to survive as provided for thereunder." The reference to "covenants which survive termination" of the Employment Agreement are identified in Section 6(e) of the Employment Agreement, which states that upon termination of employment, all of the parties' rights and obligations under that agreement "shall cease, except that Sections 6, 7, 8, 9, 10, 11, 12, 13, 16, 17, 18, 21 and 22 shall survive any termination of this Agreement or cessation of Executive's employment for the periods stated therein." Naturally, the bonus section, Section 4, was not identified as one of the surviving sections.

excellent long-term relationships with major investment sources" including Morgan Stanley and

Harrison Street (Comp. ¶ 61). However, plaintiff did not incorporate those alleged "representations"

in the Employment Agreement or make them a condition to employment. To the contrary, in Section

13, plaintiff "acknowledges and represents that she currently has no other oral or written

representations, understandings or agreements with the Company or any of its members, managers,

officers or representatives covering the same subject matter as this Agreement" (EA § 13(a)).

Plaintiff demands "compensation in the amount of $7,500,000" and punitive damages on this cause

of action.

Count II is for breach of contract—alleging that a $400,000 bonus was due under the

Employment Agreement, and Thor breached that promise by failing to make the payment. In

pleading that cause of action, plaintiff references the portion of Section 5 of the Separation

Agreement stating the any future payments would be made in accordance with the Employer's

standard procedures and applicable benefit plan documents, as well as Section 11 (identifying which

provisions of the Employment Agreement survived) and Section 6 of the Employment Agreement,

which plaintiff construes as requiring payment of the bonus if the Employment Agreement was

terminated without complying with the 30 days' notice provision.

Count III alleges a violation of the covenant of good faith and fair dealing. The theory is that

plaintiff was "terminated without cause . . . less than 30 days before expiration of the then-current

amendment to the Agreement" (Compl. ¶¶ 83-84), and that the "termination was in bad faith as her

work had been exemplary and the termination was timed solely to avoid" paying the bonus

(Compl. ¶ 86).

Finally, Count IV alleges a fraudulent inducement of the Separation Agreement on the

grounds that defendants Gliatta and Joseph J. Sitt, alleged to be the Chairman of Thor (Compl. ¶ 5),

did not intend to pay the bonus that was supposedly due under the Employment Agreement. It seeks

a declaration that the Separation Agreement (and the releases therein) are null and void.

Defendants now move to dismiss under Federal Rule of Civil Procedure 12(b)(6). We will first show that none of the claims are viable in light of the Separation Agreement & Release. In the alternative, even without the releases and acknowledgments therein, plaintiff still fails to state claims upon which relief may be granted.

# ARGUMENT

## I.

## THE COMPLAINT IS BARRED BY
## THE SEPARATION AGREEMENT & RELEASE

As Chief Judge Judith S. Kaye observed, strong policy considerations favor the enforcement of settlement agreements, and those interests are advanced "only if settlements are routinely enforced rather than becoming gateways to litigation." Denburg v. Parker Chapin Flattau & Klimpl, 82 N.Y.2d 375, 383 (1993).[4] Thus, in New York, releases with the "broadest language" are given broad effect. See Hack v. United Capital Corp., 247 A.D.2d 300 (1st Dept. 1998); see also Harding v. Naseman, 2008 U.S. Dist. LEXIS 92813, at *20 (S.D.N.Y. Nov. 13, 2008) ("Under New York law, a valid release or waiver constitutes a complete bar to an action on a claim which is the subject of the release."). In the employment sphere, courts consistently dismiss litigation brought by former employees after they sign a general release. Matter of Balyasny Asset Mgt. L.P. v. Liu, 235 A.D.3d 463 (1st Dep't 2025); Skluth v. United Merchants & Mfrs., Inc., 163 A.D.2d 104 (1st Dep't 1990). The Second Circuit, too, has specifically upheld the dispositive effect of a release in a separation agreement, and affirmed a Rule 12(b)(6) dismissal, against claims that a separation agreement was not knowing and voluntary or fraudulently induced. Pucilowski v. Spotify USA, Inc., 2022 U.S. App. LEXIS 31218 (2d Cir. 2022). See also, Merrill Lynch, Pierce, Fenner & Smith Inc. v. Oliver, 681 Fed. Appx. 64 (2d Cir. 2017) (former employee's defamation claim barred by release); Compunnel Software Grp., Inc. v. Gupta, 859 Fed. Appx. 596, 598 (2d Cir. 2021) ("the district court correctly ruled that the terms of the release contained in the settlement agreement were clear and unambiguous and enforced its terms accordingly.").

Likewise, judges in the Southern District routinely grant a Rule 12(b)(6) dismissal in employment cases based on a release. Simel v. JP Morgan Chase, No. 05 CV 9750 (GBD), 2007

---

[4] The Separation Agreement and the Employment Agreement are both governed by New York law (SA § 8; EA § 22).

U.S. Dist. LEXIS 18693 (S.D.N.Y. Mar. 19, 2007); <u>Dewey v. Ptt Telecom Neth.</u>, 1995 U.S. Dist.
LEXIS 10028 (S.D.N.Y. July 18, 1995); <u>Volk v. Liggett Grp.</u>, No. 96 Civ. 1921 (SS), 1997 WL
107458 (S.D.N.Y. Mar. 10, 1997) (Sotomayor, J.).

      Plaintiff attempts to plead two fraudulent inducement claims, a breach of contract claim, and
a claim for a "bad faith" termination in violation of the covenant of good faith and fair dealing. As
discussed below, all of those claims are barred by the Separation Agreement & Release.

      In Count I, plaintiff alleges that she was fraudulently induced to accept employment by Ms.
Gliatta's misrepresentations relating to a pension fund's commitment to provide capital, and Thor's
"excellent long term relationships" with other capital sources. (Compl. ¶ 55.) Those claims—which
arose during recruitment—necessarily existed *prior to December 5, 2022*, when plaintiff signed the
Separation Agreement & Release. That Agreement provides:

> Employee knowingly and voluntarily releases and forever discharges
> … Thor Equities LLC and… their current and former employees…
> officers, directors and agents thereof, both individually and in their
> business capacities… from *any and all claims, known and unknown,
> asserted or unasserted*, which the Employee has or may have against
> Releasees as of the date of execution of this Separation Agreement &
> Release, including, but not limited to, any alleged violation of… any…
> contract*, tort* or common law."

SA § 4 (emphasis added). Similarly, plaintiff "**FREELY AND KNOWINGLY, AND AFTER DUE
CONSIDERATION, ENTERS INTO THIS SEPARATION AGREEMENT & RELEASE
INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR
MIGHT HAVE AGAINST RELEASEES." (**SA § 11.)

      The broad language of the releases ("any and all claims, known and unknown, asserted or
unasserted," (SA § 4), and "**ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE," (**SA § 11))
covers the fraudulent inducement counts, as does the specific release of "tort" claims, since
fraudulent inducement is a tort. <u>New York v. P.A. Indus.</u>, No. 17-CV-01146 (HG), 2022 WL
4226041, at *6 (E.D.N.Y. Sep. 13, 2022) ("a fraudulent inducement claim is a tort"); <u>Seren Fashion</u>

Art & Interiors, LLC v. B.S.D. Capital, Inc., No. 23-CV-2349 (JGLC), 2023 WL 7529768 (S.D.N.Y. Nov. 13, 2023); Cipollone v. Applestein (In re Va. True Corp.), 654 F. Supp. 3d 216, 222 (E.D.N.Y. 2023). Moreover, the individual defendants are expressly protected by the release (release covers "employees . . . officers, directors and agents" of Thor, both individually and in their business capacities"). Accordingly, plaintiff has waived and released any fraudulent inducement-type claim against all of the defendants.

Regarding Count II, plaintiff also released any potential breach of contract claim for failure to pay a bonus. The broad release language in Section 4 obviously covers the bonus claim, as does the specific reference in the general release to any "contract" claim. Further, plaintiff's acknowledgment in Section 11 that she freely intended to waive, settle and release "**ALL CLAMS**" which she had or might have plainly covers the alleged entitlement to a bonus. Accordingly, in light of the release, Count II fails to state a claim. Pucilowski v. Spotify USA, Inc., 2022 U.S. App. LEXIS 31218, at *2 (2d Cir. 2022) (separation-agreement release "knowingly and voluntarily" signed barred claims stemming from employment); Matusovsky v. Merrill Lynch, 186 F. Supp. 2d 397 (S.D.N.Y. 2002).

But wait, there's more. Plaintiff alleges that her bonus had vested on December 5, 2022, because she was allegedly terminated without cause[5] "on less than 30 days' notice as required under 6(a) of the Agreement [Thor] drafted, and December 5 was only 26 days before the payment date of December 31." (Compl. ¶ 51; *see also* Compl. ¶ 73 ("Thor's termination of the Agreements was less than 30 days before the expiration date of the amendment then in effect, and less than 30 days before the December 31 payment date assured by Gliatta.")). Yet Section 3 references the $138,461.44 of future payments, and plaintiff "underst[ood] and agree[d] that . . . *no other sums* are due and payable or otherwise owing to Employee *as a result of this Agreement or any other employment or other*

---

[5] Plaintiff was *not* terminated by Thor without cause, but the parties *mutually* agreed to part ways. In light of the releases, the characterization is not material.

*agreement between Employee and Thor Equities, LLC or any affiliate thereof.*" (Emphasis added.) Thus, in stark, unmistakable language, plaintiff specifically acknowledged that besides the $138,000, "no other sums" would be due, payable, or otherwise owing as a result of the Separation Agreement *or* the *Employment Agreement.* The bonus claim, alleged to arise under the "surviving" provisions of the Employment Agreement (Compl. ¶¶ 49, 50, 67), directly contradicts the agreement and acknowledgment plaintiff made on December 5, 2022. Likewise, in Section 5 of the Separation Agreement, plaintiff "affirm[ed] that Employee has been paid and/or received all compensation, wages, bonuses, commissions, and/or vested benefits that were due Employee as of such date [December 5, 2022]." Yet the Complaint alleges that the bonus became "unconditionally due" to plaintiff upon her "termination" (Compl. ¶ 65). It is impossible for plaintiff to have a viable bonus claim in light of the broad, general release language, as well as the specific language referencing "no other sums" due, and acknowledgement that all compensation due as of December 5 (including bonuses) had been paid.

Indeed, plaintiff's position that Thor agreed to pay her an additional $400,000 makes no sense. If the parties had intended that plaintiff would receive an additional $400,000 on December 31, 2022 (or at any other time) they would have just said so directly—especially given that plaintiff's entitlement to the bonus was at the center of their dispute. See, e.g., Law Debenture Tr. Co. v. Maverick Tube Corp., 595 F.3d 458, 467 (2d Cir. 2010) (quoting Bethlehem Steel Co. v. Turner Constr. Co., 2 N.Y.2d 456, 459 (1957)) ("the court should not find the contract ambiguous where the interpretation urged by one party would 'strain[] the contract language beyond its reasonable and ordinary meaning.'"). Instead, they said *just the opposite* – no more money. Plaintiff's eisegesis, which tries to tie together Sections 5 and 11 of the Separation Agreement and Section 6 of the Employment Agreement (but, notably, not Section 4, pertaining to the bonus) (Compl. ¶¶ 74, 76, 77), to generate an agreement to pay, is frivolous in light of the clear, unequivocal, express language—in multiple places—specifically saying nothing more was owed and releasing all claims.

12

Count III alleges a violation of the covenant of good faith and fair dealing. The theory is that plaintiff was "terminated without cause . . . less than 30 days before expiration of the then-current amendment to the Agreement" (Compl. ¶¶ 83–84), and that the "termination was in bad faith as her work had been exemplary and the termination was timed solely to avoid" paying the bonus (Compl. ¶ 86). To the extent plaintiff could possibly have an implied covenant claim independent of a contract claim in these circumstances, such claim is likewise defeated by the broad releases in the Separation Agreement.

Finally, Count IV is really a breach of contract claim (for the bonus) dressed up as a fraudulent inducement claim. It alleges that defendants "did not intend to honor the bonus provision" after the Separation Agreement & Release was signed (Compl. ¶ 91). Precisely. Thor had no intention to pay a bonus following the Separation Agreement because it had no obligation to, and the whole point of the Separation Agreement was to reflect a release of the bonus (and every other) claim against Thor and its agents. If plaintiff has a viable claim to a bonus, it is a contractual claim and she can proceed under Count II. And if no bonus is due, then defendants' intention not to pay one is not wrongful. Thus, Count IV does not state an independent claim under any circumstance. Papa's-June Music, Inc. v. McLean, 921 F. Supp. 1154, 1162 (S.D.N.Y. 1996) (dismissing fraud claim where "the complaint does not allege a fraud claim that is sufficiently distinct from the breach of contract claim" but "merely appends allegations about [defendant's] state of mind to the claim for breach of contract"); Clark-Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 389 (1987) ("It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated."); Rocanova v. Equitable Life Assurance Soc'y, 83 N.Y.2d 603, 614 (1994) (upholding motion to dismiss fraud claim because "a contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations.").

## II.

## EVEN WITHOUT THE SEPARATION AGREEMENT, THE COMPLAINT FAILS TO STATE A CLAIM

Even apart from the broad releases contained in the Separation Agreement & Release, and the specific acknowledgments therein that no money other than the $138,000 was due, each of plaintiff's claims collapses on its own terms.

### A.    Plaintiff's Fraudulent Inducement Fails to State a Claim

Count I alleges that plaintiff was fraudulently induced to accept employment based on purported misrepresentations regarding Thor's access to equity. But that cause of action cannot survive in light of the plaintiff's express acknowledgment that her employment was *not* the subject of any representations outside of the Employment Agreement itself.

In Section 13 of the Employment Agreement, "Executive acknowledges and represents that she currently has no other oral or written representations, understandings or agreements with the Company… This Agreement is the final, complete and exclusive statement of expression of the agreement between the Company and Executive concerning the employment…" (EA § 13.)

That language forecloses a fraudulent inducement claim. Plaintiff expressly disclaimed any prior representations or understandings and agreed that the written contract constituted the complete and exclusive expression of the parties' agreement. Under well-settled New York law, such a "no-representations" provision bar claims for fraudulent inducement and related theories. Riehm Corp. v. Brennan, 193 A.D.3d 519, 520 (1st Dept. 2021) (granting motion to dismiss where "express language" of the agreement states that it "constitutes the complete understanding between the parties and supersedes all previous oral or written… representations."); Kim v. XP Sec., LLC, 200 A.D.3d 420 (1st Dept. 2021) (dismissing fraudulent inducement claim by new hire where employment agreement contained a "no representations clause" materially identical to the one here); WT

Holdings Incorporated v. Argonaut Group, Inc., 127 A.D.3d 544, 544 (1st Dept. 2015) ("agreement contains not only a general merger clause pursuant to which the [agreement] 'supersedes' all prior oral statements but also a 'no Additional Representations' clause that disclaims liability for any extra-contractual representation, rendering the fraud claim not viable."); DuBow v. Century Realty, Inc., 172 A.D.3d 622, 622 (1st Dept. 2019) ("Given the 'no representations' clause and the other language of the integration clause in a settlement agreement negotiated by the parties (Settlement Agreement), the court correctly dismissed the fraudulent inducement claim"); Harsco Corp. v. Segui, 91 F.3d 337 (2d Cir. 1996) (holding that a detailed contractual disclaimer of reliance on extra-contractual statements barred a subsequent fraud claim in the sale-of-business context).

No clearer language could have been used to preclude the very claim plaintiff now asserts.

Separately, Count I also fails because plaintiff ratified the contract instead of rescinding upon discovery of the "fraud." In New York, a party that is purportedly fraudulently induced has a choice: she can either elect to promptly rescind the contract and sue for damages or ratify it and thereby waive the fraud. Big Apple Car, Inc. v. City of New York, 204 A.D.2d 109, 110 (1st Dep't 1994) ("It is well settled that a defrauded party to a contract may elect to either disaffirm the contract by a prompt rescission or stand on the contract"). Continued performance under a contract, including by rendering services, accepting payment, or otherwise behaving as though the contract remains in force, constitutes an election to affirm the agreement and forecloses any claim of fraudulent inducement. See Capstone Enters., Inc. v. Cty. of Westchester, 262 A.D.2d 343, 344 (2nd Dept. 1999) (granting motion to dismiss of an employee's breach of contract claim where employee has accepted the benefits of his release agreement, and therefore has ratified the agreement and "any objection is waived"); 2 Broadway LLC v. Credit Suisse First Bos. Mortg. Capital LLC, No. 00 Civ. 5773 (GEL), 2001 U.S. Dist. LEXIS 4875 (S.D.N.Y. Apr. 20, 2001) (holding that as a matter of law, a party cannot allege a release is void after accepting benefits for the release); see also N.Y. Tel. Co.

v. Jamestown Tel. Corp., 282 N.Y. 365, 372 (1940) ("Acceptance of benefit under the contract with

knowledge of the wrong constitutes a waiver of the wrong."); Clearview Concrete Prods. Corp. v. S.

Charles Gherardi, Inc., 88 A.D.2d 461, 465 (2d Dep't 1982) (holding that rescission rights were

abandoned when a party "cognizant of the fraud… accepted the benefits of the contract and thereby

affirmed it."); Albany Med. College v. Lobel, 296 A.D.2d 701, 703 (2002) (holding an employee

who continued to perform under a contract waived his right to terminate the contract based on

alleged breaches after enjoying "substantial income and other benefits from his employment").

By her own account, plaintiff discovered "shortly after arriving at Thor" that the

"programmatic agreement" from the Danish pension fund for a $500,000,000 investment was not in

fact in place (Compl. ¶ 29) -- contrary to Ms. Gliatta's pre-employment "representation" that the

fund had made a "commitment" to the investment (Compl. ¶ 10). However, upon discovery of this

supposed fraud, plaintiff did not promptly rescind the contract. Instead, she voluntarily remained at

Thor, collecting a $400,000 annual base salary, and further ratified the contract in June and August

2022 by agreeing to amendments thereto, and ultimately accepted substantial payments under the

Separation Agreement. That conduct bars a fraudulent inducement claim. See NSI Int'l, Inc. v.

Mustafa, 2014 U.S. Dist. LEXIS 41660, at *10 (E.D.N.Y. Mar. 26, 2014) ("defendant ratified any

alleged fraud and waived her ability to challenge it by accepting payments from plaintiff under the

Settlement."); Agristor Leasing-Ii v. Pangburn, 162 A.D.2d 960, 961 (4th Dept. 1990) ("the fact that

defendant signed a payment deferral agreement bars him from challenging the original agreement on

the ground of fraud").

In addition, the alleged "assurances" by Thor about the availability of capital do not amount

to actionable or material factual misrepresentations. Plaintiff claims she was told that Thor "had

extensive, long-term relationships" with investors and that "the sky is the limit" in terms of obtaining

equity. (Compl. ¶ 13.) Even assuming such statements were made, they are, at most, vague

expressions of optimism and corporate ambition, not concrete representations of fact. Under New York law, generalized statements of hope, future expectations, or business potential are not actionable as fraud. See Nasik Breeding & Research Farm v. Merck & Co., 165 F. Supp. 2d 514, 530 (S.D.N.Y. 2001) (Rule 12(b)(6) dismissal of fraudulent-inducement claim where statements touting "very high productive traits" were "commercial puffery" and cannot support fraud claim); Coppelson v. Serhant, 2021 U.S. Dist. LEXIS 8540, at *20 (S.D.N.Y. Jan. 15, 2021) (dismissing fraudulent inducement claim where assertions that a property was a "gold mine," "would be worth well over $5M in a short period," and was "20% less than [] market" were non-actionable opinions and puffery); Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994) ("statements will not form the basis of a fraud claim when they are mere "puffery" or are opinions as to future events"). No reasonable person could justifiably rely on aspirational, non-specific statements about "relationships" and sky-limits as factual guarantees.

### B.    Plaintiff's Bonus Claim Is Not Actionable Apart from the Releases

Even without the governing releases in the Separation Agreement, plaintiff would still not have had a bonus claim under the Employment Agreement because the condition to payment – "Active Employ[ment]" on the payment date – was indisputably not satisfied. Further, plaintiff misconstrues the plain nature and meaning of the 30-day notice provision.

***Plaintiff Was Not "Actively Employed" on the Payment Date and Therefore Was Ineligible for a Bonus***

Section 4(b) of the Employment Agreement could not be more clear. To receive payment of a bonus, plaintiff had to be "'Actively Employed' by the Company on such payment date." The payment date is "15 days after [the twelve month anniversary of the Start Date]." The payment date was originally June 29, 2022, and then extended to August 29 and finally December 31, 2022.

Plaintiff and Thor mutually terminated plaintiff's employment on December 5, 2022. In this world, a person whose employment terminates on December 5 is not "Actively Employed" on

17

December 31 of the same year. Accordingly, plaintiff's entitlement to a bonus never ripened. O'Grady v. BlueCrest Capital Mgmt. LLP, 646 F. App'x 2, 4 (2d Cir. 2016) (affirming Rule 12(b)(6) dismissal where employment agreement provided that employee "will not be eligible to be paid any bonus if at any time prior to the date of any payment . . . [his] employment has been terminated"; plaintiff's "June 4, 2014 termination independently precludes his bonus claim."); Bader v. Wells Fargo Home Mortg., Inc., 773 F. Supp. 2d 397, 408 (S.D.N.Y. 2011) (dismissing claim for bonus where employee was not employed on payment date because "where the relevant bonus policy requires employment through a certain date and the employee was discharged before that date, the employee does not have a valid claim to the bonus."); Zolotar v. N.Y. Life Ins. Co., 172 A.D.2d 27 (1st Dept 1991) (holding that employee's involuntary termination prior to date required by bonus policy prevented the employee from receiving bonus); Bayer v. Oxford Univ. Press, Inc., 270 A.D. 586 (1st Dep't 1946), aff'd, 296 N.Y. 780 (1947) (holding that employee had no rights in a bonus where he was not in the defendants' employ on the required date).

Thus, since it is undisputed that plaintiff was not employed by Thor on December 31, 2022, she fails to state a claim for bonus relief.

### *A Termination On Less Than 30 Days' Notice Does Not Extend Employment*

Plaintiff tries to dodge the Actively Employed requirement by alleging that "Thor's termination on [December 5] gave less than 30 day's notice as required under 6(a) of the [Employment] Agreement it drafted." (Compl. ¶ 47) In turn, plaintiff says, "[t]he deficient notice meant that Kaufman was employed on the due date for payment of the bonus." (Compl. ¶ 48). That faulty logic does not generate a bonus.

Initially, Thor did not "terminate" plaintiff's employment. Despite her poor performance, plaintiff was not actually fired. After Thor allegedly threatened termination in June 2022, the parties continued plaintiff's at-will employment, and ultimately agreed to an immediate, mutual separation

of employment. Thus, any debate about how a hypothetical 30-day notice period might operate is purely academic and irrelevant to this case.

Second, to the extent there is any meaning or efficacy to the 30-day notice period in the Employment Agreement, the parties were free to waive and supersede it by further agreement, as they did here in the Separation Agreement.

Finally, a 30-day notice, if issued by the Thor, had meaning only if Thor elected to continue plaintiff's employment (and pay her) for some part of the 30-day period under Section 6(a)(a). But Thor also had "sole discretion" under Section 6(a)(b) to "immediately cease her employment with the Company" and pay her "no compensation from the Company thereafter, except as expressly provided for" in § 6(b).[6] So regardless of any 30-day notice, plaintiff could have no expectation of continued employment, compensation, or vesting of a bonus beyond a date unilaterally selected by Thor – which could be immediate. So even if there was not a Separation Agreement (but there was), and even if Thor had said "You're fired!" (but it did not), there is no way to construe the Employment Agreement as having provided for a bonus if plaintiff's employment was terminated within 30 days of the payment date under Section 4(b).

### C.  The "Good Faith and Fair Dealing" Claim Merely Duplicates The Meritless Contract Claim

Apart from the releases, Count III should be dismissed because it merely repackages plaintiff's bonus claim under the label of "good faith and fair dealing." The allegations in ¶¶ 81–87 are identical to those underlying her breach of contract claim—namely, that Thor terminated her employment without cause and failed to pay a "guaranteed" $400,000 bonus.

The claim fails, first, because Thor did not terminate plaintiff's employment "without cause"

---

[6] Section 6(b) required payment of a bonus only if it was "due under Section 4(b)," which in turn required plaintiff to be employed on the payment date. The Employment Agreement does not say that if plaintiff was terminated within 30 days of the payment date, the bonus vested. That is how plaintiff wants the Court to construe the agreement, but that is not what it says,

as alleged in Paragraph 83 of the Complaint. Indisputably, the parties *mutually* agreed to separate. Whether plaintiff wished to avoid the stigma of having been fired, or did not want to resign (which would have precluded certain entitlements under the Employment Agreement), the fact remains that plaintiff was *not* "terminated without cause," the predicate for Count III.

Moreover, under well-settled New York law, a claim for breach of the implied covenant cannot rest on the same facts and seek the same damages as a contract claim. See Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002) ("New York law… does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."); Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc., 810 F.3d 861 (2d Cir. 2015); see also L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 434 n.17 (2d Cir. 2011) (implied-covenant claim "based on the same facts as its claim for breach of contract" is redundant and properly dismissed). Because Count III simply duplicates the contract claim in Count II, it must be dismissed as redundant.

To the extent plaintiff intends Count III to allege a "bad faith" termination designed to avoid paying her bonus, that theory fails as a matter of law. New York is an at-will employment state, and the implied covenant of good faith and fair dealing cannot be used to limit an employer's right to terminate an at-will employee. New York courts have held that even a termination of an at will employee for any reason is not actionable, absent a vested contractual entitlement. See Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293 (1983); Mycak v. Honeywell, Inc., 953 F.2d 798 (2d Cir. 1992) (holding that in New York an employment relationship is terminable at any time by either party).

Because plaintiff was an at-will employee and had no vested right to the bonus once she ceased being "Actively Employed," her allegation of "bad faith" termination cannot support an independent claim.

In short, Count III adds nothing to the contract claim already before the Court. It neither identifies a distinct contractual duty nor alleges facts that could transform a lawful at-will termination (assuming plaintiff was fired) into a wrongful termination. Having restated the same bonus dispute and repackaging it as a claim for "bad faith," plaintiff fails to state an independent cause of action for breach of the implied covenant of good faith and fair dealing.

### D.     Plaintiff Does Not State a Claim for Fraudulent Inducement of the Separation Agreement

Count IV seeks a declaration that the Separation Agreement is "null and void" on the grounds of fraudulent inducement. It does not state a viable claim for relief.

The heightened pleading requirements of Rule 9(b) applies to a fraudulent inducement claim. See, e.g., Harsco Corp. v. Segui, 91 F.3d 337 (2d Cir. 1996) (applying Rule 9(b) to fraudulent inducement claim). Whether ordinary or heightened pleading applies, the claim fails.

Plaintiff identifies two "misrepresentations," neither of which support a fraudulent inducement claim. Plaintiff alleges that defendants Gliatta and Sitt did not disclose an intent, following execution of the Separation Agreement, not to pay the bonus (Compl. ¶¶ 91-93). We addressed that in Point I above. Whether or not plaintiff is entitled to a bonus is governed by contract. We readily acknowledge that Thor did not intend to pay a bonus to plaintiff, because the parties agreed that no bonus would be paid. Plaintiff cannot transform a meritless contract claim into a fraud by alleging that a party did not intend to do something that it had no obligation to do.

The second supposed misrepresentation is apparently in Paragraph 90, where plaintiff alleges (in italicized language) that when Ms. Gliatta presented the Separation Agreement on December 5, she "*assured Kaufman that it would not take way her rights under the [Employment] Agreement.*" So now plaintiff is seemingly relying on Ms. Gliatta for legal advice regarding the effect of the Separation Agreement. Yet Ms. Gliatta's cover letter stated: "We advise you to consult with an attorney of your choosing prior to signing the Separation Agreement & Release concerning the rights

you are waiving as well as all other terms of this Separation Agreement & Release." And in Paragraph 11, "Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Separation Agreement & Release, except for those set forth in this Separation Agreement & Release."

Thus, there are no actionable misrepresentations supporting a fraudulent inducement claim. See pp. 14-15 above (citing cases dismissing fraudulent inducement claims where agreement has a "no representation" clause).

### III.

### <u>THE INDIVIDUALS SHOULD BE DISMISSED</u>

Defendants Gliatta and Sitt are not parties to either the Employment Agreement or the Separation Agreement. Accordingly, to the extent any contract, or contract-related claim (such as Count III) survive, the Complaint does not state claims against these defendants and they must be dismissed. Crabtree v. Tristar Auto. Grp., Inc., 776 F. Supp. 155, 166 (S.D.N.Y. 1991) ("It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract").

Moreover, plaintiff does not identify any misrepresentations made by Mr. Sitt. She does not allege ever having even spoken to him. Thus, any fraud claims against him must be dismissed even if they somehow survive against Thor or Ms. Gliatta. Zutty v. Rye Select Broad Mkt. Prime Fund, L.P., 33 Misc. 3d 1226(A), 1226A (Sup. Ct. 2011) (dismissing a fraud claim where defendant failed to identify any misrepresentations made by defendants).

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss should be granted, and the

Complaint dismissed with prejudice.

Respectfully submitted,

MATALON Esquires PC
By: s/*Joseph Lee Matalon*
    Joseph Lee Matalon
1602 Lawrence Avenue
Suite 110
Ocean, New Jersey 07712
(212) 244-9000
JLM@trial-lawyer.org
*Attorneys for Defendants*

Dated: October 23, 2023